# WADE *v.* WILSON, WARDEN, ET AL.

No. 55.  Argued November 12, 1969—
Decided January 13, 1970

*Marshall L. Small,* by appointment of the Court, 394 U. S. 941, argued the cause for petitioner. With him on the briefs was *Melvin R. Goldman.*

*John T. Murphy,* Deputy Attorney General of California, argued the cause for respondents. With him on the brief were *Thomas C. Lynch,* Attorney General, *Albert W. Harris, Jr.,* Assistant Attorney General, and *Karl S. Mayer,* Deputy Attorney General.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

In 1961, petitioner and one Pollard appealed to the California District Court of Appeal from murder convictions upon which the California Superior Court had sentenced each of them to life imprisonment. California Rules of Court 35 (c) and 10 (c) required that the appellants be furnished with one free copy of the trial transcript to be shared by them for the purposes of the appeal. Pollard received the free copy but would not share it with petitioner. However, the State Attorney General loaned petitioner's appellate counsel his copy. The District Court of Appeal affirmed the convictions, 194 Cal. App. 2d 830, 15 Cal. Rptr. 214 (1961).

Five years later, in 1966, petitioner wished to pursue a collateral remedy and sought the transcript from Pollard but Pollard "refuse[d] to communicate on the subject." Petitioner's inquiry of his appellate lawyer elicited the response that the copy borrowed from the Attorney General had been returned. Petitioner then turned to the California courts seeking, however, not temporary use of a copy, but to be furnished with a copy of his own. He applied initially to the trial court and was advised that the original of the transcript was in the District Court of Appeal. He thereupon filed a *pro se* motion for a copy in the District

Court of Appeal, which motion was denied on the ground that the Court of Appeal had only the original and was not equipped to duplicate copies. He next filed a proceeding in the California Supreme Court and was advised by the clerk of that court that he must proceed in "the court possessed of the original record." [1] He renewed his application to the District Court of Appeal, which again denied it on the ground that that court had "no facility for reproducing records"; but this time petitioner was advised that the original record would be made available for copying at his expense. Petitioner then abandoned further efforts in the California courts.

In 1967, he filed the instant federal habeas corpus proceeding in the District Court for the Northern District of California. His petition alleged his indigency and the single claim that California's refusal to furnish him without cost his own copy of the transcript denied him due process and equal protection of the laws in violation of the Fourteenth Amendment. The District Court after hearing granted the writ and ordered California either to provide the free transcript or to release the petitioner. The District Court stated in an unreported opinion, "although there is no square holding on the precise question of the right to a transcript in preparing a petition for a writ of habeas corpus rather than an appeal, the logic of the Supreme Court holdings compels a finding that such a right exists." [2] The Court of Appeals for the

---

[1] Petitioner styled his application to the Supreme Court of California "A Petition for a Writ of Habeas Corpus" but the only relief he requested was issuance of the record in his case or an order to the District Court of Appeal to furnish him with the record. He did not request an order releasing him from custody.

[2] The District Court cited *Smith* v. *Bennett,* 365 U. S. 708 (1961) (habeas corpus filing fee); *Griffin* v. *Illinois,* 351 U. S. 12 (1956) (transcript on direct appeal); *Lane* v. *Brown,* 372 U. S. 477 (1963) (transcript on post-conviction appeal); *Long* v. *District Court,*

Ninth Circuit reversed on the ground that "the trial court failed to find that Wade was claiming that there was any error which occurred in the proceedings which led to his conviction which would warrant the granting of post-conviction relief. . . . Wade was not entitled to demand a transcript merely to enable him to comb the record in the hope of discovering some flaw." 390 F. 2d 632, 634 (1968). We granted certiorari. 393 U. S. 1079 (1969).

The California Court Rules require that a free transcript be furnished to convicted persons separately tried in felony cases and to each codefendant where one or more codefendants are under sentence of death.[3] Petitioner argues that in furnishing only one copy to be shared by codefendants where none received the death penalty California interposes an unconstitutional barrier to the use of its criminal appellate proceedings and that the

385 U. S. 192 (1966) (transcript on post-conviction appeal). See also *Roberts* v. *LaVallee,* 389 U. S. 40 (1967); *Gardner* v. *California,* 393 U. S. 367 (1969).

[3] Rules 35 (c) and 10 (c) provide in pertinent part:

Rule 35 (c): "As soon as both the clerk's and reporter's transcripts are completed, the clerk shall deliver one copy to the defendant or his attorney and one copy to the district attorney . . . . When there are two or more appealing defendants in a case in which a judgment of death has been rendered against one or more of the defendants, the clerk shall deliver a copy of both transcripts to each such defendant or his attorney. . . . Where there are two or more appealing defendants represented by separate counsel in a case in which judgment of death has not been rendered against any defendant, the appellant's copy shall be made available for the use of the appellants in the manner provided in Rule 10."

Rule 10 (c): "The additional copy of the record required by these rules shall be made available for the use of the parties to the appeal in such manner as the judge, or the clerk under his direction, shall prescribe; provided that the parties may stipulate to its use, and in such event only the original need be filed with the clerk of the superior court."

distinction made by the Rules, without more, establishes that California has denied him equal protection of the laws. But petitioner will not be heard to attack the Rules since they concern only the furnishing of transcripts for purposes of direct appeal and he and his appellate counsel in fact had the use on his direct appeal of the transcript borrowed from the State Attorney General and did not complain that the terms on which it was made available in any way impaired its effective use on the appeal. See *United States* v. *Raines,* 362 U. S. 17, 21–22 (1960).

Petitioner argues that in any event, contrary to the Court of Appeals, the District Court was correct in holding that because "it may not be possible to pinpoint . . . alleged errors in the absence of a transcript," petitioner was entitled to a transcript for use in petitioning for habeas corpus even though he did not specify what errors he claimed in his conviction. To pass on this contention at this time would necessitate our decision whether there are circumstances in which the Constitution requires that a State furnish an indigent state prisoner free of cost a trial transcript to aid him to prepare a petition for collateral relief. This is a question of first impression which need not be reached at this stage of the case. Notwithstanding petitioner's success in borrowing a copy of the transcript in connection with his direct appeal, his insistence in the subsequent proceedings in both the California and federal courts is that he has a constitutional right to a copy of his own. We think consideration of that contention should be postponed until it appears that petitioner cannot again borrow a copy from the state authorities, or successfully apply to the California courts to direct his codefendant, Pollard, or some other custodian of a copy to make a copy available to him. Cf. Rule 10 (c). Without such a showing, or a showing that having his own copy would

be significantly more advantageous than obtaining the use of someone else's copy, the District Court should not have reached the merits of petitioner's claim. We think, however, that the case should be retained on the District Court's docket pending petitioner's efforts to obtain access to the original or a copy. Upon being advised by the parties that petitioner has been provided such access, the court should dismiss the action. We vacate the judgments of both the Court of Appeals and the District Court and remand to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK, dissenting.

Petitioner and one Joe Pollard were convicted of murder in 1960 and sentenced to life imprisonment. Pollard received a trial transcript and when he refused to turn it over to petitioner for his use in preparing an appeal, the State Attorney General's Office loaned a copy to petitioner's appellate counsel. The California District Court of Appeal affirmed in 1961. 194 Cal. App. 2d 830, 15 Cal. Rptr. 214. Five years later, in 1966, petitioner tried in the state courts to obtain a trial transcript. Failing there, he filed a petition in the United States District Court for the Northern District of California in 1967 asking to be released because of the State's refusal to provide him a copy of the transcript. The United States District Court held petitioner was entitled to a copy of the trial record but the United States Court of Appeals reversed, holding that since petitioner did not allege any trial error which might warrant post-conviction relief he was "not entitled to demand a transcript merely to enable him to comb the record in the hope of discovering some flaw." 390 F. 2d 632, 634 (1968).

This Court today says the petitioner thus raises a constitutional question of first impression, "whether there are circumstances in which the Constitution requires that a State furnish an indigent state prisoner free of cost a trial transcript to aid him to prepare a petition for collateral relief." *Ante,* at 286. It may be conceivable that the Constitution would under certain special circumstances impose this duty on the State when it has such a record in its possession, but I cannot agree that anything shown in this record presents those special circumstances.

It is now over nine years since this case was tried. At petitioner's request a trial record was made available for him to take an appeal; eight years ago he took that appeal and lost. There certainly is no constitutional requirement that a State must continue to supply convicted defendants trial records to enable them to raise the same old challenges to their convictions again and again and again. There is not a word or a suggestion in the whole record in this case that demonstrates or even intimates that any new events have occurred since petitioner's 1961 appeal which could under any possible circumstances justify even a shadowy argument that petitioner was not guilty of the murder he was convicted of having committed. Although more than eight years have passed since that appeal, I would join in granting relief to this petitioner if he had shown, or even given any reason to believe, that new circumstances now indicate he was wrongfully convicted of a crime of which he was not guilty. See *Fay* v. *Noia,* 372 U. S. 391 (1963); cf. *Kaufman* v. *United States,* 394 U. S. 217, 231 (1969) (BLACK, J., dissenting); *Harris* v. *Nelson,* 394 U. S. 286, 301 (1969) (BLACK, J., dissenting). But we have no such case here. Petitioner has not raised any claims which indicate in the slightest that he has been convicted of a crime of which he is innocent. At the

most he has asserted a desire to review the record to find some technical legal point which he can argue to a court as a basis for release from confinement. He has already had one chance to make such arguments on direct appeal, and he lost that battle. I do not think he needs a transcript to know whether he was convicted erroneously or whether some new circumstances have arisen that now show a fatal constitutional error in the prior proceedings. In any event he has not yet based his request for a transcript on any indication of such a need. In such circumstances I see no reason whatsoever for the State to have to obtain a copy for him. This case is but another of the multitudinous instances in which courts are asked interminably to hash and rehash points that have already been determined after full deliberation and review. One considered appeal is enough, in the absence of factors which show a possibility that a substantial injustice has been inflicted on the defendant.

Nothing in this petitioner's application for certiorari or his briefs and arguments gave any indication that he might be entitled to post-conviction relief, and there is thus no reason why this Court should even have reviewed his case. I would dismiss this writ as being improvidently granted.